Mailed:
March 18, 2009
Bucher

**THIS OPINION IS A PRECEDENT OF THE TTAB**

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————

**Trademark Trial and Appeal Board**
————

Kathleen Hiraga

v.

Sylvester J. Arena

————

Cancellation No. 92047976
against Registration No. 3125129
————

Don Thornburgh of Don Thornburgh Law Corporation for
 Kathleen Hiraga.

Sylvester J. Arena, *pro se*.

————

Before Hairston, Bucher and Rogers, Administrative Trademark
 Judges.

Opinion by Bucher, Administrative Trademark Judge:

 Kathleen Hiraga has filed a petition to cancel a

registration owned by Sylvester J. Arena for the mark Garden

Organics *(in standard character format)* for goods identified as

"fertilizers, soil conditioners and soil amendments for

domestic use" in International Class 1.[1]

---

[1]  Registration No. 3125129 issued on the Supplemental Register
on August 1, 2006.

As grounds for cancellation petitioner asserts that respondent fraudulently obtained this registration inasmuch as he had not used the mark in commerce, as defined by the Lanham Act, on the date claimed in his application.[2]

Respondent, in his answer, denies the essential allegations in the petition for cancellation.

## *The Parties' Submissions*

Petitioner filed a notice of reliance on June 5, 2008, pursuant to 37 C.F.R. § 2.120(j), seeking to make of record certain of respondent's responses to petitioner's first set of interrogatories and portions of respondent's responses to petitioner's first set of requests for production of documents, including a postage statement, catalogue and invoices.  Petitioner then filed another notice of reliance on June 6, 2008, pursuant to 37 C.F.R. § 2.122(e), making of record in this proceeding certain documents obtained from the Internet archive of the www.arenaroses.com website.

For his case-in-chief, respondent filed three notices of reliance on August 5, 2008, seeking to make of record

---

[2]    Although the petition for cancellation, as filed, is grounded in fraud, abandonment, and priority of use/likelihood of confusion, the sole issue petitioner raises in her brief is that of fraud.

portions of respondent's registration file, petitioner's application file, petitioner's petition for cancellation and copies of certain pieces of correspondence with the United States Patent and Trademark Office relating to the registration, application and this proceeding; certain of respondent's responses to petitioner's first set of interrogatories; and certain documents obtained from the Internet archive of websites.

Only petitioner filed a final brief.

## *Preliminary evidentiary matters*

Respondent filed no brief, nor has he objected to any of the documents made of record by petitioner. However, we do not deem respondent to have agreed to petitioner's submission of documents not contemplated within the Trademark Rules of Practice and Procedure for such submissions by way of a notice of reliance (e.g., unauthenticated web pages, sales catalogues, invoices, blank forms of the United States Postal Service (USPS), a responding party's own discovery responses, etc.).

Web pages are not the equivalent of "printed publications," and hence are not admissible under a notice of reliance. *See Paris Glove of Can. Ltd. v. SBC/Sporto Corp*., 84 USPQ2d 1856, 1858-59 (TTAB 2007); and *Raccioppi v.*

*Apogee Inc.*, 47 USPQ2d 1368 (TTAB 1998). However, inasmuch as both parties to this proceeding have used notices of reliance to introduce Internet evidence, we treat these Internet screen-prints as having been stipulated into the record. *Life Zone Inc. v. Middleman Group Inc.*, 87 USPQ2d 1953, 1956 (TTAB 2008).

The categories of materials that may be submitted under a notice of reliance are quite limited. For example, under 37 CFR § 2.120(j)(3)(ii), a party that has obtained documents from another party may not make the produced documents of record by notice of reliance alone. Evidence not obtained and filed in compliance with this and other sections of the Trademark Rules will not be considered. *Cf.* Trademark Rule 2.123(l), 37 C.F.R. § 2.123(l).

An exception applies to produced documents, for example, to the extent that they are admissible by notice of reliance under the provisions of Trademark Rule 2.122(e) – "Printed publications and official records," 37 C.F.R. § 2.122(e). This rule provides that the parties may introduce through a notice of reliance printed publications, such as books and periodicals, routinely available to the general public in libraries or of general circulation among relevant members of the public, and official records.

The following four documents were enumerated in petitioner's notice of reliance of June 5, 2008:

- Item #3: a copy of the Arena Roses 2004 catalogue having the Garden Organics labeled products on the back cover;
- Items #2 and #5: a copy of an invoice from Colorgraphics, Inc. for the printing of 50,000 catalogues, and a copy of an invoice from Accurate Mailing Service for list management and handling services for the mailing of 19,555 catalogues on December 8, 2003; and
- Item #4: a Form PS 3602-R, "Postage Statement— Standard Mail Letters and Flats." The copy shows that this form was completed by Accurate Mailing Service on December 8, 2003 as part of a transaction with the United States Postal Service (USPS) for the mailing of 19,555 catalogues.

Arena Roses' annual catalogue (Item #3) is inappropriate for submission under a notice of reliance. While this limited-circulation sales catalogue may be a publication in the broadest sense of the word, it does not qualify as a work "available to the general public in libraries or of general circulation among members of the public" and is thus not a "printed publication" within the meaning of Trademark Rule 2.122(e). *See Hunter Publ'g Co. v. Caulfield Publ'g Ltd*., 1 USPQ2d 1996, 1997 n.2 (TTAB 1986) [while subject matter may be of interest to the general public, such materials are not necessarily in general circulation].

As to Items #2 and #5, invoices of respondent's vendors are clearly not "printed publications" or official records

and are therefore inappropriate for submission under a notice of reliance.

Finally, we find that the USPS form (Item #4) is not an official record. It appears to be a form completed by the publisher/mailer of respondent's catalogues. There are no official markings or signature on this form and it is not a record "prepared by a public officer." *Conde Nast Publications Inc. v. Vogue Travel, Inc*., 205 USPQ 579, 580 n.5 (TTAB 1979).

Hence, under the Trademark Rules, these documents, which have not been otherwise authenticated, may not be made of record by notice of reliance alone. Such evidence not obtained and filed in compliance with the Trademark Rules has not been considered.[3]

We turn then to evidentiary matters raised by respondent's case-in-chief. Petitioner has not objected to respondent's first notice of reliance in which respondent sought to make of record portions of respondent's registration file and petitioner's application file, and petitioner's petition for cancellation.

---

[3]    Had we considered these documents, it certainly would not have changed our decision. Ironically, in fact, as will be seen *infra*, had these documents been considered, they would merely have added to the evidence (i.e., interrogatory responses) already properly in the record that respondent had clearly used this mark in commerce prior to his application filing date.

Moreover, it was unnecessary to introduce into evidence under a notice of reliance respondent's registration file as it automatically forms part of the record of the proceeding by operation of the Trademark Rules without any action by the parties. 37 C.F.R. § 2.122(b)(1).

However, petitioner does object to respondent's attempt to introduce his own discovery responses into evidence.

Ordinarily, an answer to an interrogatory may be submitted and made part of the record by only the inquiring party, i.e., a party generally may not rely on his own responses to discovery requests. Trademark Rule 2.120(j)(5).[4] On the other hand, if fewer than all of the

---

[4]     (j) *Use of discovery deposition, answer to interrogatory, admission or written disclosure…*
       (5) Written disclosures, an answer to an interrogatory, or an admission to a request for admission, may be submitted and made part of the record only by the receiving or inquiring party except that, if fewer than all of the written disclosures, answers to interrogatories, or fewer than all of the admissions, are offered in evidence by the receiving or inquiring party, the disclosing or responding party may introduce under a notice of reliance any other written disclosures, answers to interrogatories, or any other admissions, which should in fairness be considered so as to make not misleading what was offered by the receiving or inquiring party. The notice of reliance filed by the disclosing or responding party must be supported by a written statement explaining why the disclosing or responding party needs to rely upon each of the additional written disclosures or discovery responses listed in the disclosing or responding party's notice, and absent such statement the Board, in its discretion, may refuse to consider the additional written disclosures or responses.

37 C.F.R. § 2.120(j)(5).

answers to a set of interrogatories are offered into evidence by the inquiring party (petitioner herein), the responding party (respondent herein) may introduce, under a notice of reliance, any other answers to interrogatories that should be considered so as to avoid an unfair interpretation of the responses offered for the record by the inquiring party.  In such a case, the responding party's notice of reliance must be supported by a written statement explaining why the responding party needs to rely on each of the additional interrogatory answers listed in the responding party's notice, failing which the Board, in its discretion, may refuse to consider the additional responses. *See TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE* (TBMP) § 704.10 (2d ed. Rev. 2004).

In this case, although petitioner made of record only a very few of respondent's answers to her interrogatories, respondent filed additional responses under his notice of reliance.  However, we agree with petitioner that these additional discovery responses were not properly made of record by respondent, as he failed to offer any explanation as to why he needs to rely upon each of these additional discovery responses, nor is it obvious to us in what way they avoid any unfairness from what petitioner submitted.  Accordingly, under these circumstances, we have

refused to consider any of these additional written responses.

It is true that respondent's interrogatory answers not properly offered in evidence under 37 C.F.R. § 2.120(j) may nevertheless be considered if the non-offering party (petitioner) does not object thereto or treats the answers as being of record.  We do not find that to be the case herein.  Respondent's notices of reliance were filed on August 5, 2008, the closing date of respondent's testimony period.  Petitioner did not present rebuttal testimony and her only filing subsequent to respondent's testimony period was her brief, in which she presented her arguments in support of her case, including her objections to the additional responses submitted under one of respondent's notices of reliance.  She objected in a timely manner and never treated these answers as of record.

Petitioner also objected to certain screen-prints that respondent obtained from the archives of the Internet Archive Wayback Machine website (www.web.archive.org). Despite the general unacceptability of this type of evidence,[5] we noted earlier that both petitioner and

---

[5]    *Paris Glove of Canada Ltd.,* 84 USPQ2d at 1858 [the *Internet Archive* and its "Wayback Machine" feature are not self-authenticating and there is no reason to treat its existence as authenticating the pages in its historical record].

respondent have relied upon screen-prints of Arena Roses' website (snapshots of the site on different dates) taken from this same archival site. Petitioner argues that we should prohibit respondent from introducing this matter in evidence inasmuch as respondent did not disclose it during discovery. Essentially, petitioner argues for application of the estoppel sanction. *See* discussion in TBMP Sections 411.04 and 527.01(e) (2d ed. Rev. 2004).[6]

However, we find that this is appropriate rebuttal evidence on respondent's part. This is true notwithstanding his earlier discovery responses to petitioner's request for documents that "he [respondent] has provided all documents which support his claims and assertions in this matter …." During discovery, respondent was not obligated to go to the Internet archive to search for documents that might be considered responsive to petitioner's document requests. However, once petitioner went to the Internet archive to obtain evidence for trial, respondent was free to do the same. Therefore, we have considered the pages respondent submitted into the record from this same website.

---

[6] Earlier, we stated that we view the introduction by both parties of archival web page evidence as constituting an effective stipulation allowing introduction of such evidence by notice of reliance. Such effective stipulation as to a type of evidence does not, however, preclude petitioner's raising an unrelated objection that the pages introduced by respondent should have been produced during discovery.

### The Record

Based on the above, the record consists of the file of the involved registration; petitioner's pending application file; petitioner's petition to cancel and respondent's answer; certain of respondent's responses to petitioner's first set of interrogatories; as well as copies of the *Internet Archive* placed into the record by both parties.

### Facts

According to the record, petitioner appears to be a specialty grower offering greenhouse seedlings of organic garden products for culinary purposes.  Respondent, an individual, started developing his line of products (i.e., "fertilizers, soil conditioners and soil amendments for domestic use") in September 2003.  Respondent initially advertised in the annual catalogue of Arena Roses – a small, family business he operated with his wife.  After Arena Roses closed in May 2006, respondent continued to market his Garden Organics products as a sole proprietor.

### Petitioner's Standing

As a threshold matter, petitioner must plead and prove that she has standing, in addition to proving that there is a valid ground for the cancellation of the registration.

*Young v. AGB Corp.*, 152 F.3d 1377, 47 USPQ2d 1752, 1754 (Fed. Cir. 1998) ["Section 14 has been interpreted as requiring a cancellation petitioner to show (1) that it possesses standing to challenge the continued presence on the register of the subject registration and (2) that there is a valid ground why the registrant is not entitled under law to maintain the registration."]

Petitioner, on May 19, 2005, filed an application, Serial Number 78632995, with the United States Patent and Trademark Office for the mark **GARDEN ORGANICS** *(in standard character format)* for "agricultural and horticultural products, namely, living plants, plant seeds, and seedlings" in International Class 31, and "educational services, namely, conducting workshops and seminars in the fields of methods for growth and maintenance of edible herbs, flowers, vegetables and fruits, the design and implementation of organic culinary beds, nutrition, recipes and distributing course material in connection therewith" in International Class 41.  On February 21, 2007, respondent's involved registration for the mark Garden Organics was cited under Section 2(d) of the Lanham Act as grounds for refusal of petitioner's application.  *See* TBMP § 309.03(b) (2d ed. Rev. 2004).

Hence, there is no question but that petitioner has standing to bring this petition for cancellation. *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 1185, 1189 (CCPA 1982).

## *Allegation of Fraud*

Fraud in procuring a trademark registration occurs when an applicant knowingly makes false, material representations of fact in connection with the trademark application. The test is whether applicant "knew or should have known" that the challenged statements in the application were false. *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 USPQ2d 1483, 1485 (Fed. Cir. 1986); and *Mister Leonard Inc. v. Jacques Leonard Couture Inc.*, 23 USPQ2d 1064, 1065 (TTAB 1992). "Materiality" of any false application statement is determined in the context of whether the false statement is critical to the Trademark Examining Attorney's decision to approve a mark for publication. *Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha*, 77 USPQ2d 1917, 1926 (TTAB 2006).

Moreover, the standard of proof for a fraud claim is the rigorous, clear-and-convincing evidence standard, and it is strictly applied. *Id.*; *Smith International Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (TTAB 1981) ["It thus appears

that the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise … "]. Any doubt as to the existence of fraud must be resolved against a finding of fraud. *Giant Food, Inc. v. Standard Terry Mills, Inc.*, 229 USPQ 955, 962 (TTAB 1986), and cases cited therein. Furthermore, fraud will not lie if it can be proven that the statement, though false, was made with a reasonable and honest belief that it was true. *See Woodstock's Enterprises Inc. (California) v. Woodstock's Enterprises Inc. (Oregon),* 43 USPQ2d 1440 (TTAB 1997).

Ms. Kathleen Hiraga brings her claim of fraud based upon Sylvester J. Arena's allegedly false statement of his date of first use. However, the critical question in this case is whether the mark was in use in connection with the identified goods as of the filing date of his use-based application. That is, if the mark was in use in commerce as of the filing date, then the claimed date of first use, even if false, does not constitute fraud because the first use date is not material to the Office's decision to approve a mark for publication. *Standard Knitting, Ltd.*, 77 USPQ2d at 1926; *Colt Industries Operating Corp. v. Olivetti Controllo Numerico S.p.A.*, 221 USPQ 73, 76 (TTAB 1983) ["The [Trademark] Examining Attorney gives no consideration to

- 14 -

alleged dates of first use in determining whether conflicting marks should be published for opposition."]. Accordingly, when faced with petitioner's claim of fraud, the only question before us is whether respondent has established use in commerce as of the filing date of the application that matured into Registration No. 3125129, specifically, as of April 14, 2005.

Petitioner's arguments are directed to the proposition that respondent, rather than making use in commerce at least as early as November 1, 2003, as claimed in his application, actually made use in commerce "at the earliest, sometime in December 2003." Petitioner's brief, at unnumbered 5. Petitioner argues that this is consistent with other documentary evidence made of record. Hence, petitioner acknowledges that respondent used his mark in commerce at least as early as December 2003, a date well prior to the April 14, 2005 date on which the involved application was filed.

Furthermore, petitioner argues that other than usage in December 2003 in the Arena Roses' catalogue for 2004, the only other use of the mark even claimed by respondent is the promotion and sales of the associated goods through his website. In support of her position that respondent was not using the mark, for example, as of two specific

dates, namely, December 1, 2003 and January 5, 2005, petitioner relies upon Internet archives of Arena Roses' website.

However, respondent counters with screen-prints from the same Arena Roses' website, researched through the same Internet Archive Wayback Machine website employed by petitioner, showing usage of respondent's mark as of his trademark application filing date of April 14, 2005.

Petitioner's own exhibit shows that the website of respondent's related company ("Arena Roses") was updated thirty times between January 5, 2005 and April 14, 2005. We find that respondent's screen-print from April 14, 2005 is certainly as probative on the question of respondent's use as of his April 14, 2005 filing date as any other screen-prints petitioner has placed into the record from earlier dates (e.g., December 1, 2003 and January 5, 2005).

In fact, based upon this evidence, we find that Mr. Arena had a reasonable basis for his belief that he was using his mark in interstate commerce for fertilizers, soil conditioners and soil amendments for domestic use at the time of filing the application. See *Maids to Order of Ohio Inc. v. Maid-to-Order Inc.*, 78 USPQ2d 1899, 1907 (TTAB 2006). Moreover, even accepting as true the details of petitioner's own allegations of respondent's date of first

use in commerce, petitioner has not established fraud. Our conclusion that respondent had made use of the mark in commerce at least as early as April 14, 2005 is consistent with all the other documentary evidence petitioner has propounded at trial. Hence, on this record, we conclude that respondent did not commit fraud in the procurement of his Registration No. 3125129.

*Decision*: Ms. Hiraga's petition to cancel Mr. Arena's trademark registration is hereby denied with prejudice.