Miguel TORRES, Appellant,

v.

CANTINE TORRESELLA S.r.l., Assignee of S. Margherita S.p.A., Appellee.

Appeal No. 86–1265.

United States Court of Appeals, Federal Circuit.

Dec. 24, 1986.

John K. Donaghy, Sughrue, Mion, Zinn, MacPeak & Seas, Washington, D.C., argued, for appellant. With him on brief was Robert G. McMorrow, P.C.

G. Franklin Rothwell, Bernard, Rothwell & Brown, P.C., Washington, D.C., argued, for appellee. With him on brief was Raymond A. Kurz.

Before MARKEY, Chief Judge, MILLER, Senior Circuit Judge, and BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

Miguel Torres appeals from the decision of the United States Patent and Trademark Office Trademark Trial and Appeal Board (Board), No. 13,724 (May 24, 1986), granting summary judgment cancelling Torres' registration No. 641,512. We affirm.

## BACKGROUND

On February 12, 1957, Torres obtained registration No. 641,512 for the trademark "Las Torres" below a design depicting three castle-like towers. The trademark was registered for use on wine, vermouth, and champagne.

On September 7, 1976, Torres filed with the Patent and Trademark Office (PTO) an application for renewal of trademark No. 641,512 pursuant to section 9 of the Lanham Act. 15 U.S.C. § 1059 (1982). In the renewal application, Torres averred that the mark as registered in registration No. 641,512 was still in use in interstate commerce for each of the goods specified in the registration: wine, vermouth, and champagne. Attached to the application was a specimen label on which the mark as registered was displayed. Torres was, in fact, not currently using the mark in the form as registered on that label, but was using the name "Torres" in conjunction with an altered design of three towers. He had used the altered mark since 1971, and at the time he filed for renewal, was using the altered mark only for wine.

S. Margherita S.p.A. (Margherita), a competitor of Torres, petitioned the Board to cancel Torres' registration No. 641,512 alleging *inter alia* that the registered trademark was not in use when Torres filed his renewal application and that he knowingly made false statements to the PTO. Cantine Torresella S.r.l. (Torresella) was substituted for petitioner Margherita. Torresella then moved for summary judgment based on Torres' answers to interrogatories and answers to requests for admissions.

In opposition to the motion for summary judgment, Torres submitted an unsworn statement entitled "affidavit," in which he admitted that in 1971 he "dropped the use of the term LAS ... and adopted the principal term TORRES over three towers design." The statement explained that he did not consider the change material and did not believe that the filing of the renewal application represented any fraud on the PTO.

The Board disagreed. It concluded as a matter of law that the changes to the mark that occurred in 1971 materially altered the mark as registered. It found that Torres knew or should have known that his statements in the renewal application were false. It concluded that the statements in the renewal application amounted to fraud on the PTO. Consequently, the Board granted the motion for summary judgment and cancelled Torres' registration.

## OPINION

Torresella petitioned the Board for cancellation of Torres' registration pursuant to section 14 of the Lanham Act. 15 U.S.C. § 1064 (1982). Section 14 lists a number of grounds for cancellation of a registration of a mark that has been registered longer than five years. Of those grounds for can-

cellation, the only one Torresella has alleged is that Torres' "registration was obtained fraudulently." 15 U.S.C. § 1064(c). Fraud in obtaining renewal of a registration amounts to fraud in obtaining a registration within the meaning of section 14(c) of the Lanham Act, 15 U.S.C. § 1064(c). *See Le Cordon Bleu, S.A. v. BPC Publishing Ltd.*, 451 F.Supp. 63, 72 n. 14, 202 USPQ 147, 154 n. 14 (S.D.N.Y.1978); *Crown Wallcovering Corp. v. Wall Paper Manufacturers, Ltd.*, 188 USPQ 141 (TTAB 1975); *G.B. Kent & Sons, Ltd. v. Colonial Chemical Corp.*, 162 USPQ 557 (TTAB 1969); *accord* 4A R. Callmann, The Law of Unfair Competition Trademarks and Monopolies § 25.45 n. 15 (L. Altman 4th ed. 1983); 1 J. McCarthy, Trademarks and Unfair Competition § 20:15 D. (2d ed. 1984). Thus, the only issue we must address is whether the Board erred in entering summary judgment for Torresella on the issue of fraud.

Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application. *See Le Cordon Bleu*, 451 F.Supp. at 72 n. 14, 202 USPQ at 154 n. 14; *Schwinn Bicycle Co. v. Murray Ohio Manufacturing Co.*, 339 F.Supp. 973, 983, 172 USPQ 14, 21 (M.D.Tenn.1971), *aff'd*, 470 F.2d 975 (6th Cir.1972). "[T]he obligation which the Lanham Act imposes on an applicant is that he will not make *knowingly* inaccurate or *knowingly* misleading statements in the verified declaration forming a part of the application for registration." *Bart Schwartz International Textiles, Ltd. v. Federal Trade Commission*, 289 F.2d 665, 669, 129 USPQ 258, 260 (CCPA 1961) (emphasis in original). The obligation to refrain from knowingly making false, material statements applies with equal force to renewal applications.

Section 9 of the Lanham Act, 15 U.S.C. § 1059(a) (1982), states the requirements for renewal of a registration:

Each registration may be renewed for periods of twenty years from the end of the expiring period upon payment of the prescribed fee and the filing of a verified application therefor, setting forth those goods or services recited in the registration on or in connection with which the mark is still in use in commerce and having attached thereto a specimen or facsimile showing current use of the mark, or showing that any nonuse is due to special circumstances which excuse such nonuse and it is not due to any intention to abandon the mark. Such application may be made at any time within six months before the expiration of the period for which the registration was issued or renewed, or it may be made within three months after such expiration on payment of the additional fee herein prescribed.

An essential element of the application for renewal is the registrant's averment that the mark as registered is in current use for the goods covered by the registration or the reasons for the mark's nonuse. The purpose of this requirement, like that in section 8 of the Lanham Act, is "to remove from the register automatically marks which are no longer in use." *Morehouse Manufacturing Corp. v. J. Strickland & Co.*, 407 F.2d 881, 887, 160 USPQ 715, 720 (CCPA 1969) (discussing the purpose of section 8).

With respect to the current use requirement, Torres admitted that in 1971 he "dropped the use of term LAS ... and adopted the principal term TORRES over three towers design." Nevertheless, in his renewal application he stated that "he is the owner of Registration 641,512; that the mark shown therein is in use in interstate commerce; [and that] the attached specimen show[s] the mark as currently used." Clearly, under the circumstances, Torres knew or should have known that the mark as registered and the specimen submitted were not currently in use when he filed his renewal application.

Torres argues that the registered mark is not materially different from the form of the mark as now used in that TORRES and the three towers are the principal parts of both marks. Thus, any error in the renew-

al application was due to a misunderstanding on his part and not because of his fraudulent intent. In this respect, Torres says his case is similar to *Morehouse Manufacturing v. J. Strickland & Co.*, 407 F.2d 881, 160 USPQ 715. This case is, however, readily distinguishable from *Morehouse.*

*Morehouse* dealt with a section 8 affidavit and an error of the registrant in submitting therewith its original label on which the goods were identified as "hair dressing" rather than its current label on which the goods were identified as "pressing oil" for hair. *Morehouse*, 107 F.2d at 886–88, 160 USPQ at 719–20. Section 8 does not require submission of a specimen of the mark or a description of the goods on which the mark is currently used. Support for an averment that the mark is in current use can be supplied in alternative ways. All that was critical to the validity of the section 8 affidavit was a correct averment that the mark was currently in use. In *Morehouse* the evidence demonstrated that that averment was true.

In contrast to section 8, section 9 does require the submission of a specimen showing current use of the mark and a list of the goods on which the mark is still in use. Unlike section 8, failure to submit a specimen showing current use and to specify those goods covered by the registration on which the mark is still in use is fatal to a section 9 application for renewal. The statutory requirements cannot be waived except on the grounds set forth in section 9 itself.

An additional basis for distinguishing *Morehouse* is that in *Morehouse*, although the old and new labels were slightly different, it was held that they both showed the same registered trademark. In Torres' case, not only was the label currently used different from the one submitted with the renewal application, the marks on the labels were clearly different as well. The Board held as a matter of law that the mark was materially altered and that the new display created a different commercial impression. We have no reason to disturb the Board's conclusion on this point. Thus, even if Torres had submitted the label currently in use, his renewal application would have been denied. The problem of fraud arises because Torres submitted a label that he knew or should have known was not in use that contained a mark clearly different from the one in use. In addition, he submitted an affidavit stating the mark was in use on wine, vermouth, and champagne when he knew it was in use only on wine.

If a registrant files a verified renewal application stating that his registered mark is currently in use in interstate commerce and that the label attached to the application shows the mark as currently used when, in fact, he knows or should know that he is not using the mark as registered and that the label attached to the registration is not currently in use, he has knowingly attempted to mislead the PTO. The decision whether the *current* usage is not materially different from the mark as registered *despite the change* must rest with the Board, not the trademark owner. *Compare In re Holland*, 737 F.2d 1015, 1019, 222 USPQ 273, 276 (Fed.Cir.1984) ("[I]t is the practice of the office to allow renewal on the basis of a label which presents the mark in a somewhat different form from the form in which the mark is registered if the specimen does not show a material alteration of the mark as registered.") (footnote omitted). On the facts of this case, we hold that the Board did not err in granting summary judgment because the record clearly establishes that Torres committed fraud. The Board's decision is, therefore, affirmed.

AFFIRMED.